MORGAN *v.* SCOTT-MAYER COMMISSION COMPANY.

Opinion delivered April 18, 1932.

*Buzbee, Pugh & Harrison,* for appellant.

*Francis T. Murphy* and *Eugene H. Murphy,* for appellee.

BUTLER, J. In the case of *D. D. Adams* v. *W. O. Scroggins,* pending in the chancery court, the proceeds of a quantity of assets involved in that litigation were

deposited in the registry of the court. S. R. Morgan acquired the interest of a number of the parties to the litigation who were entitled to a part of this fund. Numerous parties intervened from time to time, among others the Scott-Mayer Commission Company, which, in its intervention, alleged that it was the owner of a valid and subsisting judgment against S. R. Morgan obtained in the Pulaski Circuit Court on October 16, 1922, on which there remained unpaid a sum which, together with the accrued interest, amounted to $1,019.75 on the date of the intervention. A certified copy of the judgment was attached to the intervention as exhibit A thereto.

Further allegation was made that Morgan was the owner of the assets involved in the litigation then pending in the chancery court in the aforesaid case of *Adams* v. *Scroggins,* and that certain sums of money were on deposit in the registry of the court subject to be disbursed to the said Morgan. The intervention concluded with a specific prayer that the Pulaski Chancery Court fix and declare a lien in favor of the intervener upon any money involved in the litigation and a general prayer for all other legal and equitable relief to which the intervener might be entitled.

On July 20, 1931, the court rendered a decree adjudging the rights of the several interveners in the action and, on the intervention of the commission company, rendered a personal judgment in its favor against Morgan in the sum of $1,019.74, declaring the same to be a lien upon all the property of the said Morgan.

On September 11, 1931, the commission company obtained from the clerk of the Pulaski Chancery Court a writ of execution on the aforesaid judgment which was executed by levying upon a certain automobile, the property of S. R. Morgan. In order to discharge this execution, Maude Wade Morgan, who claimed to be the owner of the automobile, executed a bond with sureties, the condition of which was that she should interplead "before the next term of the court to which the order of execution in this action is returnable and will prosecute

to judgment without delay her interpleader for the property attached in this case and claimed by her," and, in the event that the property should be found to be that of S. R. Morgan, that she would deliver the same to the sheriff, etc.

On October 5, 1931, the Pulaski Chancery Court, on motion of the appellant, entered an order amending the judgment of July 20, 1931, eliminating the personal judgment rendered against S. R. Morgan and substituting in lieu thereof and the lien given therein the following: "The court finds that Scott-Mayer Commission Company has a judgment against S. R. Morgan which it obtained in other courts, and that it is entitled to a lien against any funds of the estate belonging to, or which might belong to, S. R. Morgan in the amount thereof, to-wit, $1,019.74."

On the 15th day of December, following, the commission company appeared in court and filed its motion to set aside the decree of October 5, 1931, setting up, among other things, that said amended decree was rendered at a subsequent term of the court and without notice to it. On the 18th day of December, Maude W. Morgan filed her intervention claiming the automobile. To this intervention a demurrer was filed, and on the 23d day of December, 1931, the court entered an order finding that the decree entered October 5, 1931, was after the term at which the decree of July 20 had been entered, and that said last-mentioned decree "truly speaks the finding of the court at that time." The court found that Maude W. Morgan had failed to intervene within the time nominated in the bond, and had made default.

The demurrer to the intervention was treated as a motion to dismiss, and was sustained. The court then found that the automobile had been delivered by the sureties to the sheriff of Pulaski County, and exonerated them from further obligation on the bond, ordering that the commission company proceed with the sale of the car under execution, and rendering a judgment against Maude W. Morgan and her sureties on the bond for costs.

That part of the decree of the court awarding personal judgment against S. R. Morgan and dismissing the intervention of Maude W. Morgan is here on appeal.

The appellants first contend that that part of the decree of the Pulaski Chancery Court of July 20, 1931, rendering a personal judgment against S. R. Morgan on the intervention of the Scott-Mayer Commission Company was erroneous. It is insisted that no summons was issued on the intervention, and no defense interposed by Morgan to the prayer of the intervention. There is no recital in the decree that any evidence was heard, and the court therefore should not have granted any relief beyond that sought in the prayer of the intervention, which was for a lien on the funds of Morgan then in the registry of the court. The court erred in rendering a personal judgment, the appellants contending that there was no foundation in the allegation to support a personal judgment. They cite and rely on the case of *Wilson* v. *Overturf,* 157 Ark. 388, 248 S. W. 898, to support the contention made. It is further insisted that, since the judgment was erroneously made, there was no foundation for the execution, and that it was wrongfully issued.

It is further suggested by the appellant that, if the judgment of July 20, 1931, was not a nullity, the execution issued was without warrant because not authorized by the terms of the decree of July 20, 1931. The position taken by the appellant on these questions is without foundation. In the case of *Wilson* v. *Overturf, supra,* the court held that a judgment by default must be responsive to the allegations of the complaint, as the default after service of summons admits only the allegations of the complaint, and that these must be sufficient to support the judgment. This is the settled rule, *Thomas* v. *Hickman,* 164 Ark. 469, 262 S. W. 20; *Shelton* v. *Landers,* 167 Ark. 638, 270 S. W. 522, but it has no application to the case at bar, because this was not a judgment by default. The decree of July 20, 1931, recites: ''And S. R. Morgan, being present in person and submitting himself to the jurisdiction of the court in this case, and all parties an-

nouncing ready for trial, the court finds, etc.," and he must be deemed to have acquiesced in the judgment then rendered.

Although prayer for a judgment was not included in the specific relief asked, the statement of facts, and not the prayer, constituted the cause of action, and the court may grant any relief that the facts pleaded and the general prayer may warrant where the element of surprise does not exist. *Alberson* v. *Klanke*, 177 Ark. 288, 6 S. W. (2d) 292. The judgment of the circuit court pleaded in the intervention was a cause of action which warranted the rendition of a judgment in the Pulaski Chancery Court, although there was no specific prayer for such judgment. Where there is a prayer for special relief and also a prayer for general relief, the court may give to the complainant under his general prayer any relief warranted by the facts alleged. *Cook* v. *Bronaugh*, 13 Ark. 183; *Rogers* v. *Brooks*, 30 Ark. 613; *Ashley* v. *Little Rock*, 56 Ark. 391, 19 S. W. 1058; *Waterman* v. *Irby*, 76 Ark. 551, 89 S. W. 844. The court therefore properly rendered a personal judgment, and it was not necessary, in order to warrant the issuance of an execution, that the judgment direct that one might be issued, as the issuance of an execution is authorized by § 4253 of Crawford & Moses' Digest, providing that an execution may issue upon any final judgment, order or decree of a court of record for a liquidated sum of money and for interest and costs, or for costs alone.

We take judicial knowledge that the April term of the chancery court had expired before October 5, 1931, and therefore the court had lost control of the decrees rendered at the April term, except for the causes mentioned in §§ 1361 and 6290 of Crawford & Moses' Digest. This case does not fall within any of the exceptions in those sections, and they therefore have no application, and the only ground on which the decree of October 5 could be justified was on the theory that the judgment then being entered was the judgment of the court on July 20, 1931, and that the order was made now for then. If

there was any testimony introduced on the hearing of the motion for the judgment *nunc pro tunc* of October 5, none has been preserved in the record, and to justify such an order that testimony must be clear and so decisive in its nature as to overcome the recitals of the written judgment sought to be corrected, (*Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674; *Turnbow* v. *Baird,* 143 Ark. 543, 220 S. W. 826), and on the hearing of a petition for a judgment *nunc pro tunc* the trial judge may indulge his personal recollection as to the judgment sought to be corrected. *Bertig Bros.* v. *Grooms Bros.,* 164 Ark. 628, 262 S. W. 672. We must therefore indulge the presumption that the trial court's finding "that the decree of July 20, 1931, truly speaks the finding of the court at that time" was supported by the testimony in the case or the personal recollection of the judge. Moreover, it may be observed that the order of October 5 was in effect an entirely different judgment from that entered on July 20. The power of the court by order *nunc pro tunc* could not be invoked, as it had then no power to change or revise the judgment, since that power could not be used to correct errors or mistakes, but only to state what was actually done and which had failed to be properly recorded. *Evans* v. *U. S. Anthracite Co.,* 180 Ark. 578, 21 S. W. (2d) 952. The court therefore correctly held that it was without authority to render the decree of October 5, 1931, in so far as it sought to change the decree of July 20, 1931.

■ From what has been said, it follows that the contention of Maude Wade Morgan that there was no valid decree of July 20, 1931, upon which to base an execution, and that the execution, moreover, was not valid because there was no authority in that decree for the issuance of an execution, cannot be sustained. It is further insisted, however, on her part, that, if the decree properly recited a judgment against S. R. Morgan, and there was a valid execution thereunder, the decree of October 5, 1931, excused her from filing her intervention; that, when filed, it alleged facts which, if true, entitled her to retain the automobile, and that the court erred in sustaining

the demurrer to her intervention, and should have permitted* her to introduce testimony in support of the allegation.

The answer to this contention is that she was in default before October 5, 1931, and that order, as conceded by counsel, was obtained without any notice to her adversary and after the time when the decree of July 20, 1931, had become final. In order to obtain the discharge of an execution, she obligated herself to intervene before the next term of the court. This she failed to do, and she cannot justify this default by the void order of October 5, 1931. The court had before it her intervention and the motion to set aside the order of October 5, 1931, from the 15th of December until the 23d of December, and it then disposed of these motions with the rest of the case. Considering the record before us, we cannot say that the court erred. The decree therefore, both as to S. R. Morgan and Maude Wade Morgan, is affirmed.

KIRBY, J., dissents.